**Entered on Docket**
**August 24, 2005**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**FILED**

**AUG 10 2005**

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   NC-04-1311-SBrP |
| WILLIAM JEFFREY GILLIAM, | ) | Bk.No.   04-42153 |
| Debtor. | ) | |
| WILLIAM JEFFREY GILLIAM, | ) | |
| Appellant. | ) | **M E M O R A N D U M**[1] |

Argued and Submitted on
March 24, 2005 at San Francisco, California

Filed - August 10, 2005

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Randall J. Newsome, Chief Bankruptcy Judge, Presiding

---

Before: SMITH, BARR[2] AND PERRIS, Bankruptcy Judges

---

[1]This disposition is not appropriate for publication and may not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel. See 9th Cir. BAP Rule 8013-1.

[2]Hon. James N. Barr, United States Bankruptcy Judge for the Central District of California, sitting by designation.

This appeal is from a final order dismissing the chapter 11 case of debtor, William Jeffrey Gilliam, for cause. We AFFIRM.

## FACTS

Debtor filed this chapter 11 bankruptcy on April 19, 2004. The voluntary petition form he completed directs petitioners to list all "prior bankruptcy cases filed within the last 6 years" and "pending bankruptcy cases filed by any spouse, partner or affiliate of this debtor." At the time Debtor filed his petition, he had two related chapter 7 cases pending in South Carolina. He disclosed one of the pending cases, involving an affiliate (In re Marine Energy Systems Corporation, Case No. 97-01929B ("MESC case")) but did not disclose his individual case, styled In re William J. Gilliam, Case No. 96-76468B, filed eight years earlier in 1996[3] ("1996 case"). Though he had received a discharge in the latter case in 1999, it remained open at the time he commenced the present case.[4] Debtor also did not disclose that he had filed a chapter 13 case in the Northern District of California, Santa Rosa Division, on July 31, 2000, Case No. 00-11820 ("Santa Rosa case"). He claims that, for various reasons, he did not believe he had to list the cases on his current petition.

Debtor filed the present case the same morning a hearing was scheduled to be heard in a state court action against him filed

[3]Debtor had filed a chapter 11 case in 1996 in the District of Delaware, which was later transferred to South Carolina and, in 1998, converted to a chapter 7.

[4]The two cases are sometimes referred to herein collectively as the "South Carolina cases."

2

by his former domestic partner, Joan Cooper. Cooper had filed a motion in that case alleging, among other things, that Debtor was a vexatious litigant. The hearing was scheduled to take place at 8:30 a.m. According to Debtor, he notified both Cooper and the state court that he had filed bankruptcy prior to the commencement of the hearing, but the state court conducted the hearing anyway and entered a default judgment against him.[5]

Debtor claims that he first deposited his petition into the court's drop box at 7:19 a.m. on April 19, and that, while he was physically present at 9:00 a.m. to file the petition and pay the filing fee, administrative delays imposed by the Clerk of the Court prevented it from being filed until later. Because the record on appeal does not include a conformed copy of the petition bearing the clerk's time-stamp, there is no evidence of what time the petition was actually filed or whether it was filed

---

[5]Debtor commenced an adversary proceeding against Judge Laurence Sawyer, the state court judge, and the two creditors involved in the Cooper action, seeking, among other things, to set aside the default judgment as a violation of the automatic stay. That case was dismissed with prejudice by the bankruptcy court.

Judge Sawyer's ex parte motion seeking dismissal of the adversary proceeding against him states that the judge had entered his tentative ruling on April 16, the business day prior to Gilliam's petition filing date. In his tentative ruling, the judge refused Gilliam's request for leave to file cross-complaints and found him to be a vexatious litigant. Gilliam's attorney requested a hearing, without which the tentative ruling would automatically have become the order of the court. Neither Gilliam nor his attorney attended the 8:30 a.m. hearing which took place on April 19. The panel obtained a copy of the ex parte motion from the bankruptcy court's electronic docket for Adversary No. 04-4139, available through PACER (Public Access to Court Electronic Records).

3

before the state court hearing.[6]

According to Debtor, on April 22, 2004, Cooper sought and obtained an affirmation from the state court that the April 19 hearing had not violated the automatic stay.[7]

On April 28, Debtor filed a motion seeking authority from the bankruptcy court to execute a settlement agreement involving Debtor, creditors in the MESC case and the MESC chapter 7 trustee. Opposition to the motion was posed by one of Debtor's former spouses, Cathleen Gilliam, as well as by General Dynamics Corp ("GD"). Following a flurry of motions and responsive pleadings on issues ranging from relief from stay to the employment of counsel, the court held a hearing on May 27. Thereafter, the court issued an order to show cause why the case should not be dismissed with prejudice ("OSC"), and set a hearing to address that and various other pending motions for June 9. (Case No. 04-42153, Docket entries of 05/28/2004, 06/09/2004.)

In response to the OSC, Debtor filed a 37-page opposition brief the day before the hearing, arguing that there was no cause for dismissal under §§ 1112(b) and § 305(a). Among other things, Debtor advised that he had amended his petition to list the Santa

_____

[6]Debtor apparently admits that the time-stamp on his petition would reflect a time later than 9 a.m., but attributes this to administrative delays imposed by the court clerk.

In Judge Sawyer's ex parte motion to have the adversary case against him dismissed, his attorney states that Debtor's petition was not time-stamped until 11:00 a.m. on April 19.

[7]The Judge's ex parte motion also states that because the Cooper action was a matter originally commenced in the area of domestic violence stay-away injunctions, the analysis of whether an automatic stay applies may be different.

4

Rosa case and that he had not initially listed the 1996 case based on his belief that the case had been consolidated with the MESC case. All in all, Debtor maintained that his failure to disclose all related bankruptcy cases was inadvertent and that dismissal of the current case would not be in the best interest of creditors, particularly since he had filed a disclosure statement and plan.

The United States Trustee supported dismissal on the grounds that the timing of the filing suggested an improper intent to thwart the state court proceedings, Debtor failed to disclose all related bankruptcy cases, his debt consisted primarily of delinquent personal income taxes, and Debtor's ability to fund a plan was highly speculative.[8]

At the June 9 hearing, the court ordered that the case be dismissed with prejudice pursuant to §105(a) and §109(g), ordering Debtor not to file another bankruptcy petition for 180 days under penalty of sanctions of not less than $50,000.00. This timely appeal followed.

JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2). We have jurisdiction under 28 U.S.C. § 158(b)(1).

ISSUES

1.   Whether the bankruptcy court abused its discretion in
     dismissing Debtor's case for cause.

---

[8]The United States Trustee has informed the Clerk that he is not a party to this appeal and that he did not intend to participate in the appeal.

5

2.  Whether the court erred in finding that Debtor made false and misleading statements under penalty of perjury.

3.  Whether the court erred in prohibiting Debtor from filing another bankruptcy petition for 180 days.

4.  Whether the court erred in dismissing an adversary proceeding after Debtor filed the Notice of Appeal commencing this appeal.

STANDARD OF REVIEW

The bankruptcy court's decision to dismiss a case for cause under § 1112(b) is reviewed for abuse of discretion. St. Paul Self Storage Ltd. Partnership v. The Port Authority of the City of St. Paul (In re St. Paul Self Storage), 185 B.R. 580, 582 (9th Cir. BAP 1995). Findings of bad faith are reviewed for clear error. Eisen v. Curry (In re Eisen), 14 F.3d 469, 470 (9th Cir. 1994). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake had been committed. In re Leavitt, 209 B.R. 935, 938 (9th Cir. BAP 1997)(citation omitted). If the trial court's account of the evidence is plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as a trier of fact. Id.

The issue of statutory construction involving the proper application of §105(a) and § 109(g) is also before the panel. Legal issues such as interpretation of statutes and rules are reviewed de novo. Arnold v. Gill (In re Arnold), 252 B.R. 778,

6

784 (9th Cir. BAP 2000); In re Carty, 149 B.R. 601, 602 (9th Cir. BAP 1993).

DISCUSSION

A.   Dismissal of Debtor's Case.

The court dismissed Debtor's case for cause on its own motion[9] on the grounds that Debtor had willfully omitted both a prior bankruptcy case and a pending chapter 7 case, used the bankruptcy proceeding as a litigation tactic, and filed the case with no reasonable basis or prospect of reorganizing.

Under § 1112(b)[10], bankruptcy courts have broad discretion

_____

[9]Section 105(a) makes clear the court's power to act *sua sponte* where no party in interest or the United States trustee has filed a motion to dismiss a bankruptcy case. In re Greene, 127 B.R. 805, 807-808 (Bankr. N.D. Ohio 1991); see also In re Meints, 222 B.R. 870, 871-72 (D. Neb. 1998).

[10]Section 1112(b) provides in relevant part

Conversion or dismissal
(b) . . . the court may convert a case under this chapter. . . to a case under chapter 7. . . or may dismiss a case under this chapter. . . whichever is in the best interest of creditors and the estate, for cause, including--
    (1)  continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
    (2)  inability to effectuate a plan;
    (3)  unreasonable delay by the debtor that is prejudicial to creditors;
    (4)  failure to propose a plan under section 1121 of this title . . . within any time fixed by the court;
    (5)  denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;
    (6)  revocation of an order of confirmation under section 1144 of this title. . . and denial of confirmation of another plan or a modified plan under section 1129 of this title. . .;
    (7)  inability to effectuate substantial consummation of a confirmed plan;
    (8)  material default by the debtor with respect to a confirmed plan;

(continued...)

7

to convert or dismiss a chapter 11 case for cause shown. Lack of good faith in filing the case may be cause for dismissal. <u>See</u>, <u>In re Little Creek Dev. Co.</u>, 779 F.2d 1068, 1072 (5th Cir. 1986). "The test [of good faith] is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to affect a speedy, efficient reorganization on a feasible basis." <u>In re Marsch</u>, 36 F.3d at 828. "The existence of good faith depends on an amalgam of factors and not upon a specific fact." <u>In re Arnold</u>, 806 F.2d 937, 939 (9th Cir. 1986). The determination requires a case-by-case assessment of multiple factors, taking into account the circumstances of each case. <u>United Enters, Ltd. v. ACI Sunbow, LLC (In re ACI Sunbow, LLC)</u>, 206 B.R. 213, 219 (Bankr. S.D. Cal. 1997). While the court's discretion is not completely unfettered, the court is not required to give exhaustive reasons for its decision. <u>In re Koerner</u>, 800 F.2d 1358, 1368 (5th Cir. 1986).

There is no bright line, talismanic number of factors which must exist to find bad faith; the weight of any given factor depends on the facts and circumstances of the case. <u>See, Laguna Assocs. Ltd. Partnership v. Aetna Casualty & Sur. Co. (In re Laguna Assocs. Ltd. Partnership)</u>, 30 F.3d 734, 738 (6th Cir. 1994).

The bankruptcy court listed three independent grounds for dismissing Debtor's case. Debtor argues on appeal that the court

---

[10](...continued)
  (9)  termination of a plan by reason of the occurrence of a condition specified in the plan; or
  (10) nonpayment of any fees or charges required under chapter 123 of title 28. . . .

8

abused its discretion when it dismissed his case, *sua sponte*, because the court failed to apply the "totality of circumstances" test. Specifically, Debtor claims that the court erred in finding that he willfully omitted information concerning prior bankruptcies from the voluntary petition, attempted to use bankruptcy as a 'mere litigation tactic' and submitted schedules and statement of financial affairs containing false and misleading information. On all counts, we disagree.

None of the arguments Debtor offers on appeal persuades us that the court erred in finding that he filed the petition in bad faith or abused its discretion in dismissing his case.[11] We agree with the court's findings that, under the circumstances of this case, Debtor's actions lead to the conclusion that the petition was not filed in good faith and should be dismissed.

1. <u>Failure to List Prior Cases.</u>

The first, and perhaps most important, basis for the court's ruling was its finding that Debtor filed the bankruptcy petition in bad faith, as evidenced by his failure to disclose two prior bankruptcy cases, i.e., the Santa Rosa and 1996 cases. Indeed, Debtor initially listed only the pending bankruptcy case of his corporate affiliate, <u>MESC</u>.

According to Debtor, the court erroneously failed to consider the later amendment disclosing the Santa Rosa case which

---

[11]Some of Debtor's arguments are difficult to follow. For example, Debtor claims that he presented unrefuted evidence that he has spent considerable sums of money overcoming fraudulently obtained state court orders and judgments involving Cooper and GD, but he fails to explain how this is relevant to the issue of the dismissal.

9

he filed prior to the OSC hearing.  Debtor's explanation was that he initially omitted it because he believed the case was irrelevant since it had been dismissed.  The court found his explanation to be "preposterous," noting that since Debtor had attended law school, he should have known that questions answered under penalty of perjury must be accurately and fully answered, regardless of their relevancy.

The petition form Debtor completed directed him to list all "prior bankruptcy cases filed within the last 6 years."  The Santa Rosa case clearly should have been listed on Debtor's petition in the first instance.  That Debtor cured the error in his amended petition helps his argument.  However, we do not find that it was clearly erroneous for the court to view the initial omission as evidence of bad faith, especially since the correction was not made until after the OSC was issued and, further, in light of Debtor's failure to also list his 1996 case, a case that was still pending and active in South Carolina.

Debtor claimed that he omitted the 1996 case because he believed it had been "effectively consolidated" with the MESC case which he did list on his petition.  On appeal, as proof that these cases were consolidated, Debtor points to colloquy from a hearing in one of the South Carolina cases where the parties discuss the idea of having one trustee administering the claims in both of Debtor's South Carolina cases.

The bankruptcy court was not convinced by Debtor's argument and noted that, even in his amended petition, Debtor again suspiciously omitted his individual chapter 7 case still pending in South Carolina.  The court determined that Debtor was

10

attempting to "finesse" that case by claiming it had been
consolidated with the <u>MESC</u> case.

In the court's view, the omission of the South Carolina case
was particularly egregious because Debtor had every reason to
conceal the fact that a chapter 7 trustee had control of his 1996
financial affairs and property, including the settlement Debtor
is seeking leave to enter into from this Court. For these
reasons, the court found Debtor's omission was willful and held
that on this ground alone, the court was justified in dismissing
the case with prejudice.

Though not for the reasons articulated by Debtor, it is not
clear that Debtor's omission of the 1996 case was as egregious as
the court found it to be. The petition form required Debtor to
list prior cases "<u>filed within the last 6 years</u>." Debtor's case
was filed <u>eight</u> years before the present case and converted from
a chapter 7 to a chapter 11 just over six years before the
current filing and, thus, was not technically "within in the last
6 years." To be sure, in the interest of full disclosure, Debtor
should have disclosed the 1996 case. However, since the
disclosure was technically not required, we disagree with the
court's determination that the omission was willful and that, <u>on</u>
<u>this ground alone</u>, the court was justified in dismissing the case
with prejudice.

On the whole, however, we do not find that the court's
conclusion – that Debtor's omissions were evidence of bad faith –
is clearly erroneous. Even if we may have weighed the evidence
differently, the inferences drawn by the court from the evidence
are plausible in light of the record viewed in its entirety. The

11

court was presented with a debtor who had three prior or on-going bankruptcy cases, but who only initially disclosed one of those cases when filing this petition, his fourth in less than eight years. Additionally, Debtor failed to disclose a case filed within the prior six years, the explanation for which the court reasonably found implausible, and further failed to disclose another actively ongoing case, albeit filed more than six years earlier.

    2.  <u>Litigation Tactic.</u>

As an additional and independent ground for dismissal, the court found that Debtor filed his petition as a litigation tactic against a host of pending lawsuits brought by or against him, involving various domestic partners, spouses and children. Debtor conceded that one of his motives for filing his petition was to halt a hearing scheduled to take place in the Cooper state court case. The court noted that the Cooper case involved the same set of circumstances that was the subject of another federal court suit brought by Debtor, <u>Gilliam v. Sonoma County, et al.</u>, No. C-02-3382, which was ultimately dismissed with prejudice, attorney's fees and costs being awarded against Debtor in the amount of $34,553. In that case, in response to Debtor's motions for reconsideration and recusal, the court filed a lengthy opinion warning Debtor of further sanctions and condemnation as a vexatious litigant, if he persisted.

The court also found noteworthy that Debtor filed this petition shortly after GD had obtained a writ of attachment in the South Carolina cases as to all of Debtor's property. The court concluded that Debtor was attempting to use the bankruptcy

12

as both a shield and a sword in his various disputes.

On appeal, while admitting that obtaining a stay in the state court proceedings was one reason for filing his petition, Debtor contends that there were other reasons he filed his petition when he did. Specifically, Debtor claims that he filed this petition to 1) regain possession of his good name, which was "wrongfully taken from him in his July 1996 chapter 11 bankruptcy"; 2) clear up a "dilemma" involving a settlement in the South Carolina cases, the GD writ of attachment against his interest in <u>MESC</u> case settlement proceeds, and a $5.2 million claim asserted by the IRS; and 3) "clean up" his credit rating.

By all accounts, the debts in this case consist primarily of delinquent personal income taxes allegedly owed by Debtor. He states that the IRS filed a proof of claim in this case asserting the right to collect taxes that were discharged in his 1996 case. He also contends that the IRS claim is in error and believes that the IRS claims should be adjudicated in the instant bankruptcy case, even though the matter is currently before the bankruptcy court in South Carolina. The United States Trustee has indicated that the trustee in the 1996 case has not objected to claims filed by the IRS in that case and that he intends to pay at least a portion of the claims from proceeds of the <u>MESC</u> case settlement. The trustee apparently disputed Debtor's assertion that he stands to receive 20% of the proceeds under the settlement agreement.

Whether Debtor is seeking a tactical advantage in the Cooper state court case, or in the South Carolina cases, makes little difference. "It constitutes bad faith to file bankruptcy to

13

impede, delay, forum shop, or obtain a tactical advantage regarding litigation ongoing in a nonbankruptcy forum – whether that nonbankruptcy forum is a state court or a federal court. <u>In re Silberkraus</u>, 253 B.R. 890, 905 (C.D. Cal. 2000) <u>citing</u> <u>In re SGL Carbon Corp.</u>, 200 F.3d 154 (3d Cir. 1999) (bad faith for debtor to file bankruptcy to seek to gain a tactical litigation advantage in pending antitrust litigation); <u>In re Start the engines, Inc.</u>, 219 B.R. 264 (C.D. Cal. 1998) (bankruptcy filed in bad faith because petition filed for the improper purpose of delaying a state court action); <u>In re St. Paul Self Storage</u>, 185 B.R. 580 (bad faith for debtor to file bankruptcy one day prior to a hearing on a creditor's discovery motion in state court litigation revolving around a lease that was allegedly owned by debtor); <u>see also</u>, <u>In re Little Creek Dev. Co.</u>, 779 F.2d 1068 (the seminal bad faith case, which opined, inter alia, that it is bad faith to file bankruptcy as a follow on to state court litigation).

Even accepting Debtor's stated reasons for filing this petition, it is clear that he was, in large part, attempting to circumvent proceedings which are on-going in both the state court and in the South Carolina cases. Therefore, in our view, the court did not err in finding that Debtor filed his petition as a litigation tactic.

    3.  <u>Debtor has no Business or Means of Repaying his Debt.</u>

As a third ground for dismissal, the court determined that Debtor was not engaged in business and had no visible means of repaying even a fraction of his debt. Notwithstanding Debtor's filing of a plan and disclosure statement the day before the

14

hearing, the court found that there was no reasonable basis for concluding that Debtor had any prospects of reorganizing under chapter 11.

Debtor listed $38,000 in assets and some $7,000,000 in debt, including a lien held by the IRS for more than $5.2 million. Debtor does not dispute that he is not engaged in any business which he is attempting to reorganize or from which he receives a substantial income stream. He has no employees, relatively little cash flow and no other apparent sources of income to sustain a plan of reorganization. As the court found, though Debtor claimed to make $6,000 per month, he did not disclose the source of those funds. The court also had difficulty accepting Debtor's asserted expenditure of $3,000 a month for food for just himself, and over $1,000 a month for clothing, finding that such expenditures cast "fatal doubts upon his lifestyle, his financial acuity, his honesty, or all three."

The court summarized the matter as follows:

> In any event, Chapter 11 reorganizations are not built on spending more money each month than is brought in. Although he apparently pins his hope of reorganizing upon his receipt of some of the money from the settlement I am asked to approve today, he provides no basis for believing that the Chapter 7 trustee in his South Carolina bankruptcy or the IRS or General Dynamics or one his former wives don't already have a superior claim to all or most of that recovery. In any event, disputes over such funds should be resolved in South Carolina, not here.

Transcript of Proceedings, June 9, 2004, p. 11.

As the court in <u>Little Creek</u> stated,

> "Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria'".

15

779 F.2d at 1073.

With a few exceptions, not present here, the purpose of chapter 11 reorganization is to assist financially distressed businesses or individuals by providing them with breathing space in which to return to a viable state. Winshall Settlor's Trust, 758 F.2d at 1137; see also, In re Dolton Lodge Trust No. 35188, 22 B.R. 918, 922 (Bankr. N.D. Ill. 1982); In re Ironsides, Inc. 34 Bankr. 337, 339 (Bankr. W.D. Ky. 1983)("If there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its raison d'etre . . . ."). A petition may be dismissed pursuant to § 1112(b) to prevent misuse of the chapter 11 remedy by debtors who are not bona fide business organizations filing to reorganize an ongoing enterprise. 22 B.R. at 924. The court did not err in finding that Debtor had not offered evidence or arguments sufficient to establish the viability of his plan of reorganization. 30 F.3d at 38. The court's findings are sufficient to establish cause for dismissal of the case under § 105(a).

Nor did the court clearly err in determining that Debtor would likely be unable to fund a plan from the settlement proceeds, as Debtor contends he will do. The trustee in the South Carolina cases has not objected to the $5.2 million tax lien held by the IRS and Debtor proffered no reliable theory upon which the lien could be avoided.[12]

---

[12]On appeal, Debtor contends that his "Statement of Financial Affairs disclosed his 1996 debtor in possession Form 1040, which contained an amendment to tax year 1993 eliminating the IRS pre-petition claim." However, the record submitted on appeal does not

(continued...)

16

After reviewing the record in its entirety, we are not left with a definite and firm conviction that the court erred.  <u>In re Leavitt</u>, 209 B.R. at 938.  The court determined that the purpose for which the petition was filed was not consonant with the purpose of the Bankruptcy Code, and thus that its decision to dismiss the case was proper.

B.  <u>False and Misleading Statements.</u>

The court found Debtor made false and misleading statements in his petition, under penalty of perjury, and indicated that it would refer the matter to the State Bar of California.[13]

Debtor contends that the court's findings are in error because he was entitled to amend his schedule under Rule 1009(a), which permits the amendment of a voluntary petition, schedule or statement "at any time before the case is closed."  The omission of his Santa Rosa case was "an oversight" which was cured by his amended filing, and therefore, Debtor argues, it should be excused pursuant to Rule 1009(a).  While it is true that amendments to a petition may be made freely, i.e., without leave of the court, the fact that an amendment <u>can</u> be made does not preclude a court from finding the initial omitted information to

---

[12](...continued)
contain the information Debtor describes.  Issues raised in a brief but not supported by argument are deemed abandoned absent manifest injustice.  <u>Humble v. Boeing Co.</u>, 305 F.3d 1004, 1012 (9th Cir. 2002).

[13]According to Debtor's disclosure statement, he passed the February 2004 California bar exam and has satisfied all other requirements to practice law in California, except that the Committee of Bar Examiners has not yet reached a favorable determination of moral fitness as set forth in Rule X of the Rules Regulating the Practice of Law in California.

17

be indicative of bad faith. Further, the court can also consider the _timing_ of the amendment as indicia of bad faith. In this case, it appears the amendment was spurred by the OSC issued by the court. Finally, the court's consideration of Debtor's legal background was not unreasonable. The court's findings regarding the omission of the Santa Rosa case are not clearly erroneous.

As for the 1996 case, Debtor maintains that he did not fail to disclose it but determined that the case had been consolidated with another bankruptcy case taking place in the same court. Therefore, he urges, it was not necessary to amend his petition to reflect his South Carolina case. We agree with Debtor on this narrow point, but for a different reason. As discussed above, the wording on the petition form is such that technically Debtor was not required to list the 1996 case. Therefore, the omission of the 1996 case from the petition cannot be characterized as a false and misleading statement. However, in light of our analysis regarding the Santa Rosa case, the ultimate conclusion of the bankruptcy court is not clearly erroneous.

C.  Prohibition of Further Filings by Debtor.

Debtor argues that the court erred in prohibiting him from filing another bankruptcy petition for 180 days. This issue has become moot as well over 180 days have passed since the court entered its order dismissing Debtor's case. Debtor is no longer barred by the order from filing another petition, should he deem that to be appropriate.

D.  Dismissal of the Adversary Proceeding.

Debtor contends that the bankruptcy court erred in dismissing a related adversary proceeding after Debtor had filed

18

a notice of appeal in this case. Presumably, though it is unclear, Debtor is referring to Adversary No. 04-4139 which is the adversary proceeding he filed against the judge in the Cooper state court case, as well as the attorneys involved in that case. This argument will not be considered by the panel since we do not have jurisdiction to hear Debtor's challenge of the court's separate order, filed August 13, 2004, dismissing the adversary proceeding.

The bankruptcy court holds jurisdiction over an adversary proceeding after dismissal of the underlying case. <u>In re Lake Tahoe Land Co., Inc.</u>, 12 B.R. 479, 481 (Bankr. D.Nev. 1981). Debtor failed to file a notice of appeal in that proceeding, or a motion to extend the time to appeal within ten days of the entry of the Order, as required by Rules 8001 and 8002. Debtor's challenge of that order is beyond the scope of this appeal and beyond the jurisdiction of the panel. <u>See In re Crystal Sands Properties</u>, 84 B.R. 665, 667 (9th Cir. BAP 1988)(an appellate court has jurisdiction to hear an appeal only when a timely notice of appeal has been filed).

CONCLUSION

Based on the foregoing, we AFFIRM.

19

U.S. Bankruptcy Appellate Panel
of the Ninth Circuit
125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California  (626) 229-7220
Appeals from all other Districts (626) 229-7225

NOTICE OF ENTRY OF JUDGMENT

BAP No. NC-04-1311-SBrP

RE: WILLIAM JEFFREY GILLIAM

A separate Judgment was entered in this case on  August 10, 2005.

BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the Bankruptcy Court.  Cost bills should be filed with the Clerk of the Bankruptcy Court from which the appeal was taken.
9th Cir. BAP Rule 8014-1

ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from which the appeal was taken, will be issued 7 days after the expiration of the time for filing a petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order.  See Federal Rule of Appellate Procedure 41.

APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the Clerk of this Panel.  The Notice of Appeal should be accompanied by payment of the $255 filing fee (effective November 1, 2003) and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court of Appeals for the Ninth Circuit.  See Federal Rules of Appellate Procedure 6 and the corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time requirements.

CERTIFICATE OF MAILING
------------------------------------

The undersigned, deputy clerk of the U.S. Bankruptcy
Appellate Panel of the Ninth Circuit, hereby certifies that a copy
of the document on which this certificate appears was mailed this date
to all parties of record to this appeal.

By: Patti Ippolito

Deputy Clerk: August 10, 2005